The next case is Davidson v. City of Stafford, Texas. Good morning, Your Honors, and may it please the Court, none of the defendants in this case are entitled to summary judgment, and I'll start first with the claims against the defendant officers and their individual capacity. As to the officers, the summary judgment was granted based on qualified immunity. In this case, qualified immunity turns on whether there was probable cause to believe there was probable cause for the offense of obstruction of a passageway under Texas law. Now, this Court has recognized in Mangieri v. Clifton in 1994 and many other cases that an officer can be mistaken about probable cause, but that mistake has to be reasonable, and if the mistake is not reasonable, then there is no qualified immunity. And in this case, no reasonable officer could have believed that probable cause existed for the offense of obstruction of a passageway as it's defined under Texas law. And so the question is, what was clearly established in the law at the time of Davidson's arrest? Well, we have to go back decades, and before we get to the obstruction standard, to look at what the Supreme Court said about the First Amendment rights that are at play in this circumstance. In McIntyre v. Ohio Elections Commission, the Supreme Court said it's fundamental that you have a First Amendment right to engage in close, personal conversation and to distribute literature. And in Schenck v. Pro Choice Network in 1997, the Supreme Court said, specifically in this context of pro-life advocates outside of an abortion facility, said that they have a right to engage in close, personal conversations and distribute literature to people who were approaching the abortion facility. So in Meyer v. But here the officers are having to rely on disputed arguments, if you will, as to who was doing what. And the lady from Planned Parenthood, Chosid, is that how you pronounce it? Chosid? I say Chosid. Chosid? Okay. Chosid is saying he is keeping people from, you know, he's harassing people trying to come into the clinic. So why can't they rely on that, at least for the probable cause? Even if mistaken. We may conclude very much that there wasn't probable cause here, and that's fine. But the qualified immunity question is, you can be mistaken as long as it's not unreasonable, your belief. What makes it unreasonable for them to rely on Chosid saying, you know, he's harassing people, he's obstructing their entrance into the clinic? Well, thank you, Judge, and that is precisely what this issue devolves to on this question of qualified immunity. It's not reasonable because to say somebody is harassing doesn't have any legal effect. The question, they are claiming qualified immunity for the offense of obstruction of a passageway, which is defined very specifically in Texas law. Thirty-two years ago, the Texas Court of Criminal Appeals said obstruction of a passageway requires that passage be completely or severely blocked. And try as they might throughout this litigation, the defendants have tried to avoid discussing that standard, and I believe the effect of that was the district court sort of elided it as well. So you're saying they needed to ask Chosid, has he completely or severely blocked the entrance? And if she had said yes, even if she was lying, then they would have been reasonably relying on her. But having failed to ask that or get that information from her, they had nothing to rely on. Is that the argument? Well, I would say it even goes further than that. I mean, given the fact that you have a complaint lodged against a political opponent of my client in this case, like you do in the SBA case versus Driehaus, which was discussed later in the brief on the First Amendment chill claim, I would argue it wouldn't have been reasonable that even if Chosid had said something like that, a reasonable officer seeing Davidson standing there, not obstructing traffic at the time that they approach him, holding a sign, waving to cars, he even tells the officers when they ask him, are you approaching and talking to people? He says, yes, in fact, here I'm handing out these cards to people discussing pregnancy services. Yeah, but we have case law that's clear that the officer can rely on one witness over another on the scene on disputed facts. So if Chosid had said he's blocking the access, they could have believed her. But she didn't say that, did she? She did not say that. And in fact, and this is a critical point, I am not even disputing the facts, any material facts that the defendants have put into the record. Their affidavits that came after their depositions affirmatively negate probable cause for obstruction. Chosid flag reports that Chosid told me when I arrived that Davidson was approaching people, that he was talking to people, discussing what his beliefs are, that he was following people to the doorway. We've disputed that he has done that, but nonetheless, he could rely on that. She told him he was following people and approaching people. One cannot obstruct under Sherman and Hay and longstanding Texas law if you're following somebody because you can't, you have to at least be in front of them. And in Hay v. State, the Court of Criminal Appeals even said, even when you deliberately slow your pace in front of a car trying to enter through a driveway, this was a labor picketer case, and he ignored a direct order from a police officer on the scene and slowed himself as a car tried to approach. And the court called that momentary hesitation and said, even though it was deliberate, that is not enough for obstruction in light of the First Amendment rights to communicate a message. And if we look at the Schneider v. State of New Jersey case from 1939, the Supreme Court specifically held that individuals have a right to impart information, including the distribution of literature, to people upon the sidewalks and including on streetcars on the street. And that line of cases is what informed the Sherman court, the Texas court, when they narrowly construed the obstruction statute. And that narrow construction was even already recognized by the Fifth Circuit and Howard Gall Company in 1988. So you're saying these officers were on notice that this statute is restricted to complete or near-complete obstruction of the passageway, and that when First Amendment rights are involved, the fact that somebody's passing out literature doesn't involve obstruction or doesn't imply obstruction, and therefore, they could not have had a reasonable belief that they had probable cause, that it had to be unreasonable, or at least that there's a fact question about their reasonableness or something. I don't know. Exactly, Your Honor. And there's no fact in the record that even establishes that. Well, no, because it's objective. So you're saying, as a matter of law, they could not have had such a reasonable belief. Well, we did not file a motion for summary judgment yet. So at this point, I'm saying the facts in the record preclude summary judgment for the defendants on qualified immunity. But it's exactly right. There is no fact in the record. And I've briefed this extensively. I've quoted the Deposition Testament. I've quoted the best parts of their record. And all the facts show that Davidson was following people and approaching people. There's no fact that shows he was even ever momentarily in front of a vehicle or a person. Let me ask you this. In the area of excessive force and other areas of qualified immunity, the Supreme Court has often said, you need to have basically not just broad generalities, but a case, if not exactly on point, clearly on point that puts people on notice. So it's not clear to me whether that line of authorities has been applied in this context. But if we assume the Supreme Court interprets qualified immunity the same way, regardless of what the constitutional claim is, what case would put these officers on notice that their conduct was violating the Constitution? The best facts in the record that the officers can rely on shows its claims  are exiting the lot. Qualified immunity is precluded based on those facts, based on the Sherman case. Because in Sherman, you had exactly this situation. You had a driveway where the picketer deliberately walked in front of the vehicle and slowed his movement. And the court said, if you have nothing more than a momentary hesitation of that vehicle trying to enter, that cannot be obstruction of Texas law. That was 1981. And that is the case that the Fifth Circuit in 1988 recognized and applied. And that standard was, again, reaffirmed by the Court of Criminal Appeals in 1982 and the Hay case, which I've also discussed in the brief and the reply. And so essentially, what we have is, the best facts they have are that I was told, the officer says, I was told that Davidson was inconveniencing our people and delaying their movement. Well, in light of these rights that the Supreme Court has recognized long ago in Schenck, in this specific context, and Schneider, the right to hand out literature, including to streetcars, and in light of Sherman, the officer had no probable cause, unless he at least tries to ascertain whether Davidson had ever at least been in front of somebody and obstructed their movement. There's no fact that any patron was required to deviate from their path at all. And that distinguishes this situation from any of the other cases that the defendants have tried to cite. Let me ask you about your claim for prospective relief. What specifically would you want the court to order or do or say that would be that the, you don't want just some vague thing, follow the law or something. I mean, what specifically could the court order that would give your client relief in terms of wanting to go back and stand around at the Planned Parenthood? Well, Your Honor, I would point to this. On record page 403, which is the defendant's reply in support of their motion for summary judgment, the city defendants say that, they don't just say that a reasonable officer could have believed probable cause existed here. They go a step further. And they say that on these facts, probable cause did exist for obstruction of the passageway. And they say, because Davidson was, quote, approaching persons, entering and exiting, and delaying them in doing so, and this could amount to under the statute. That is not the standard. They only get to that point by ignoring the governing standard from 32. So if you were to prevail on your prospective relief, how, what would the order look like that would give them specific directions that would be helpful to your client, but not, you can't have vague injunctions. And so what would, what would the order say? It would be a declaratory judgment. If, don't even, declaratory judgments can be considered separately from an injunction. It can be a declaratory judgment that, in fact, Stafford, you must follow the standard that's been in Texas law for 32 years. Approaching vehicles, talking to people, is not obstruction under the statute. Because to, to, to find that probable cause exists on those facts, think about the situation Mr. Davidson is in now, and he's been there for two and a half years with no assurance that he won't be prosecuted if he engages in materially the same activity again at this location. On these facts, Stafford, by saying throughout this entire case that probable cause actually existed, he's at pain of arrest if he goes back and Planned Parenthood calls and says the exact same thing they did, that he's delaying and inconveniencing our, our patrons. Under the facts of this case, that officer would have no duty to do anything but accept that on its face, would not have to ask Mr. Davidson anything. So nobody could protest at this clinic, is what you're saying? That is the, and, and I've, I've written in the brief that, and you know, this, sometimes in these First Amendment cases, I try to stay away from, from the rhetoric, but, but I think the rhetoric is appropriate here because Stafford's position literally reads out the narrowing construction that has allowed this statute to stand. This statute was specifically narrowed by the Court of Criminal Appeals to protect the very rights that were at issue here. And this adjudication from the district court reads that standard out. You're saying essentially their reading of it, if that's how the statute really was interpreted and worded, would almost be facially invalid. Exactly. That's why you have an as-applied, because the statute is worded as fine, but only with the narrowing that it doesn't mean that anytime anybody's even slightly delayed, you know, because anybody who's standing anywhere passing out brochures, you know, do you want a discount on, you know, 10% discount at this store or that store, they're standing at a mall, you know, you're walking by, you can keep walking or you can stop for a moment, what are they handing out? And so you're momentarily, as you said, delayed, but I wouldn't necessarily call that obstruction. What you're saying is the Texas courts have recognized that, made that clear, and Stafford has now taken that out. Essentially we're under this decision, if it stands, we're in the position before Sherman was decided, in which the statute would be facially unconstitutional, and that's why, and Stafford can't, on the one hand, claim that probable cause existed here, but then claim that we can't challenge the statute as applied because it's already been upheld. Can you address the city's liability? Yes, Your Honor, thank you. The district court did not even address the first argument that we had as to this issue, which is that, first of all, it's established and undisputed that Chief Cron is the policymaker for the city, and he testified in his deposition that, and he is the policymaker, he testified that probable cause existed. It's not just stated in their answer on behalf of all defendants, it was actually him in his deposition said, yes, I endorse this understanding of the person can be arrested for failure to ID even before another predicate arrest has happened, which is facially contrary to the statute, and the district court found that. That is, by his testimony, he's established the city's policy, and that's reflected because those other incident reports that are in the record show that seven other officers have applied that statute in the exact same manner, and there were seven incidents where that happened against particular defendants out of nine times where the statute was cited in any offense report. And I would add, lastly, even if, on section 4204, when the officers arrived, it's undisputed that Davidson was not obstructing anybody. Officer Jones in his affidavit admitted that he didn't see anything illegal. And so, even if Chosett had told the officers, you know what, Davidson was chained himself to a barrel and was sitting in the driveway and stopping people from moving. When the officers arrived, he had apparently obeyed any order that had been given to him to remedy that violation. And so, under Mangieri, from this court in 1994, even if he had done much more than he did and engaged in obstruction, there's no probable cause. Thank you, counsel. We have your arguments. You can save some time for rebuttal, of course. May it please the court. My name is Heidi Gemmini, and I represent the defendants, the city of Stafford, Chief Krohn, Officer Jones, and Officer Flagg. The court made a comment earlier that I first wanted to address, that the officers here were relying on disputed arguments. Based on defendant's read of the briefs, we don't believe that there's a dispute as to the facts known by Officer Flagg at the time of the arrest. Now, in the context of the qualified immunity defense, the court is supposed to look at the totality of the facts and circumstances known by Officer Flagg at the time of the arrest. There's no dispute between Davidson and defendants as to what those facts were. Now, the dispute would be between what Choset said he was doing and what he said he was doing. I think the dispute is more as to what the actions were that Davidson took while he was in the parking lot and on the sidewalk. But the officers didn't see anything. They can only rely on what they're told. And my point, which actually helps you, is that they can rely on Choset saying, well, he was throwing himself in front of the sidewalk and no one could move, and he could say, no, I wasn't. They could believe her and arrest him. That's correct. Okay. That was my point. But you're saying they don't even really disagree about what he's doing, and what he was doing is not a violation of 4203 as narrowed by the Court of Criminal Appeals, is it? What I'm saying is that there's no dispute here as to the facts known by Officer Flagg. And although the facts may—the video, the facts as shown in the video and the facts known to Officer Flagg at the time of the arrest may be slightly different, there may be slightly a variation there in that the video shows that he was approaching customers in their vehicles, and then the facts known to Officer Flagg at the time of the arrest were based on Choset's statements that he was actually approaching customers in the parking lot and on the sidewalk. That there's no dispute. What he knows is that Davidson is approaching customers as they're coming to the clinic, or patients, or whatever, okay? Why is that a violation of 4203? What was it that Choset said that would give Flagg probable cause to believe that, in fact—and I'm talking about probable cause, we'll get to qualified immunity in a minute. Right. Was there actual probable cause? Because if there was, we're done. Was there actual probable cause? What is it that he was doing that would constitute this obstruction? Let's look at the facts as set forth in Officer Flagg's affidavit and in his deposition testimony. The first relevant fact, dispatch to patrol said that Planned Parenthood had reported that he was flagging down customers before they entered into the facility. He arrived at the facility and observed that Davidson was generally on the green space. What Choset specifically told Officer Flagg was that Davidson was approaching customers on the sidewalk and in the parking lot and was following the customers on the sidewalk to the entryway in front of the business. Choset also told Officer Flagg that Davidson was harassing customers.  Davidson's counsel suggests that there has to be a specific requirement that Davidson be in front of the customers or that he in some way cause them to deviate from their path. Although, hey, and I think to a certain extent, Morrison, there may have been a deviation in the course of the pedestrian to go around the obstruction, there's no particular language in those cases that say that there must be some kind of physical deviation by the person who's being obstructed. How is it constitutional if he's not allowed to stand there? If he's not obstructing anybody, how can you constitutionally forbid him from standing there and as people walk up saying, hey, I have a brochure or whatever, which they're free to ignore and keep walking, or they can stop and listen to him? Defendants argue that he was actually, he did actually constitute an obstruction. And the case that I'd like to point you to is the Hay case. It's a court of a criminal appeals case from the 80s. And essentially, it's the gold standard because it actually involved an upholding of a conviction under Texas Penal Code 42.03. In that case, what you had is a pedestrian who, or a person, and I'm assuming it's a protester, although the case doesn't clearly say whether or not it was a protester, standing and obstructing a regular-sized sidewalk. In the middle. In the middle of the sidewalk. Was there any, did anybody say that Davidson was standing in the middle of the sidewalk? Chosid reported that he was standing on the sidewalk, following customers on the sidewalk to the entryway in front of the business. Well, his definition is pretty revealing, isn't it? At least Flagg's is. Because he says, I consider obstruction if you speak to them. You don't have to stand in front of them. You don't have to touch them. But if you speak to them and they stop and have to take account of you, that's deterring them from what they were doing and that's obstruction. That's correct. That's a clear misunderstanding of the law. All that's needed to prove an obstruction is an unreasonable inconvenience. I think the key issue. Well, that's unconstitutional. That is the particular language of Section 42.03. If you take a look at that statute. That's why the Court of Criminal Appeals narrowed it. The Court of Criminal Appeals did not narrow that. It interpreted it to mean something more like standing in the middle of the sidewalk as opposed to, because I walk by people all the time who are trying to hand me stuff. They're not obstructing me in the least. Now I may out of politeness feel like I need to look at the person or something like that. That's not an obstruction. Your argument is it is. And this is fairly fundamental because this goes to his question of prospective relief. It sounds like if you're agreeing that just trying to hand somebody a brochure on a sidewalk is obstruction, then it does sound like he needs the prospective relief because you're their lawyer and you're telling them that that's the law and that's not the law. And if that is the law, then that law is unconstitutional as applied. You take a look at the Hay case law. There was not a complete blockage there. There was not a complete restriction on, there was not a complete obstruction. The court must have found under that statute that there was an unreasonable inconvenience to the pedestrian. Okay, but there's a very big difference between I'm walking up to a sidewalk and somebody's standing in the middle and I've got to try to walk around and he's kind of dancing there with me as I'm trying to walk around him versus somebody standing on the side of the sidewalk. I'm walking along and he's shouting, you know, let me pray for you or whatever. And I'm just walking, walking, walking. And that, the second is what happened here, isn't it? There's no evidence he stood in the middle. The evidence is he stood on the side of the sidewalk at most. The evidence, what we get from Chosett is that he was harassing customers, that he was following them, that he was delaying them from entering unreasonable places. Where's the delay? The delay is... The delay is that they stopped. Did they have the option of walking by him? Could they have marched down the sidewalk and he's shouting, you know, I'm going to pray with you or abortion is evil or whatever he's shouting, okay, and could they have just kept walking? Was there anything that required them to stop other than perhaps politeness or curiosity or all the things that make people stop when somebody's got brochures? The only thing that's in the record, the facts that are in the record are that Chosett informed Officer Flagg that Davidson was harassing customers and that he was unreasonably inconveniencing them and delaying them from entering and from exiting the clinic, although the focus is on the totality of the facts and circumstances. Did she use the word unreasonable? She did, I believe, and that would be in her affidavit and I can refer you to that. But when she told Flagg what was going on, what facts, because, I mean, conclusion of harassment, I might feel harassed when people are trying to hand me brochures as I walk into the mall. That doesn't make them harass me, okay? So what facts, and the facts are very important here because where he was standing and what he was doing is the whole case. So what facts did Chosett give Flagg that would suggest that people were being unreasonably inconvenienced in walking in? I'm going to have to direct you back to Officer Flagg's affidavit that he was told by Chosett that Davidson was approaching customers on the sidewalk and in the parking lot, following them to the entryway of the clinic so there was not a momentary hesitation, there was more, there was more of a delay there than... But they're being followed, that means they're walking. How am I being obstructed if someone's following me? It may be annoying, it may be upsetting, it may make me feel bad, but how is that obstructing me from walking into a building if somebody's following me? The statute does not rule out the fact that the customers here who were delayed, that that was an unreasonable inconvenience. In fact, the Hay case supports that. But how am I delayed if someone's following me into a building? You're delayed if you're, you are, if your movement is restricted in approaching the sidewalk or the entryway. And you think somebody's movement is restricted by being followed? The language used in the affidavit and the language given by Chosett is broad enough to include a situation where a customer would have been delayed, either obstructed by Davidson or delayed in that they were not able to move, you know, toward, down the pathway. But there's nothing that shows that he was keeping them from moving other than people might, if somebody's shouting at me, I might stop for a minute to go, why are they shouting? What are they saying? And maybe I'm interested in hearing what they have to say, maybe I'm repulsed by what they're saying and I keep on going. If you look at Officer Flagg's affidavit, and I'm not saying that it says the specific words that you want to hear, it's obvious I know that you want to hear those words, but the language. No, I don't want to hear them. I'm looking at, the question in the case is whether they were unreasonable in determining they had probable cause to arrest him for actually a charge they didn't even arrest him for, but a charge we've now, you have come up with to justify this. And it doesn't seem like it does. So I'm not looking for anything specific except what the evidence shows. Just to finish my point, if you look at the actual affidavit language, it's broad enough here to include more than Davidson's actions in simply following people to the front of the entrance. The affidavit references David's actions in harassing customers. The affidavit is broad enough to include a delay there in the path of the customer to the entryway. If you take a look at that language. But wouldn't this apply in any abortion clinic protest? Somebody might feel harassed if they're walking in to get an abortion and somebody is shouting things like, this is evil, or God will, and I'm not saying he was saying this, but people say those kinds of things, which they have a First Amendment right to say, just as the people who disagree have a First Amendment right to say what they believe, to be clear. So he's saying something that's offensive, let's say, to somebody who is walking into a clinic for abortion counseling, all right? In your view, is that obstruction, if he's standing there, not physically impeding anything, and he's just saying, you are committing a bad act, or God, I'm praying for you, or whatever. He's saying those kinds of things. Is that harassment? To the extent under looking at the particular statutory language, all that is necessary is an unreasonable inconvenience. And then in applying the Hay case law, if all we have is a slight deviation by a pedestrian, those cases could be extrapolated here in this situation to show that an obstruction can be something as simple as delaying a person from entering into the clinic. Okay. And so you would find that that conduct would be prescribed by the statute. So then how can you disagree with his request for prospective relief? Because he has that right. I mean, again, this is a difficult area, okay? I completely get that. You have two people that strongly disagree. The Planned Parenthood people strongly disagree with Mr. Davidson on an important issue. No question. But that's what the First Amendment's kind of all about. So he has the right to disagree with Planned Parenthood. They have the right to conduct their clinic. And so you're saying his mere expression of his disagreement with what he perceives as something bad is enough to shut him down and put him in jail. How can you square that with the First Amendment and the recent U.S. Supreme Court decisions in that? It's not just his disagreement. What is important here is his actions. And those actions, again, are set forth in the affidavit. But I'd like to take the court back to the real inquiry, which is, we're looking at this under the lens of qualified immunity. And what Davidson has to prove is that no reasonable police officer could have concluded that probable cause existed here to arrest Davidson under the obstruction statute. That no reasonable police officer could have believed that probable cause existed here. So what that even means is that if reasonable police officers disagree, if you have 10 reasonable police officers and nine of them do not agree with Davidson, that a reasonable police officer could have believed that probable cause existed, but you have one that did agree with Officer Flagg, then in that situation, qualified immunity protects Officer Flagg. That's why I'm asking about the prospective relief. It seems to me, even if you want a qualified immunity because it was not objectively unreasonable, because the law was unclear, or he was unclear, or the whole city of Stafford is unclear, then don't we need to clarify this? I don't know that the court needs to make any kind of broad statement of law here today. I think the Hay, Robles, and Smith case law is sufficient for the court to uphold the summary judgment and the well-reasoned summary judgment of Judge Hittner that, and I'll direct you to a page in his order, what Judge Hittner found was that Davidson had not met his burden to rebut Officer Flagg's qualified immunity defense because the evidence shows Officer Flagg at least arguably had probable cause because he reasonably believed Davidson made passage through the parking lot and into Planned Parenthood unreasonably inconvenient by harassing Planned Parenthood's customers and stopping vehicles as they entered and exited the parking lot. That's another thing I wanted to get to. The court called up the video in this case, and I'm assuming that the court has looked at it. If you take a look at the video, there are a few points that I want to bring out. Davidson was in the entry and exit way to the parking lot for approximately 20 of 21 and a half minutes. So he was standing somewhere in the entrance and the exit of that parking lot. Davidson approached three customers in their vehicles, gave them coupons, and talked to them. These interactions were as short as 13 seconds and as long as 65 seconds. Somewhere, take the interaction with the first car, somewhere between the time that that car was leaving and somewhere between the point where the conversation between Davidson ended and the time that that car was leaving, somewhere after that, for about 25 seconds before that car left, Davidson was standing somewhere in the remaining space in the entrance and exit of the parking lot. For some of those seconds, he was completely blocking the entryway into the parking lot. So if you take a look at that 25-second period when you've got a car in one lane, Davidson is in the other space, completely blocking the entrance into the parking lot. Did he actually block a car? It's not clear from the video, but again, the inquiry here is whether a— I can't tell if a vehicle slowed or if they put on their blinker or attempted to. It doesn't look like there was an attempt made, but we really can't—we'll never know that. We could never know that because what we're getting is just a video from a particular viewer, a particular angle. Let me ask you this because this hypothetical keeps coming to mind, which is at all the polling places, you're supposed to stand 100 feet out, but if you stand 100 feet out, candidates, their supporters, and so forth, can stand there handing out brochures, shouting at voters and saying vote for so-and-so, so-and-so, vote against so-and-so, so-and-so, and that is very, very common, okay? What about your rule would limit a sheriff who doesn't like his opponent doing that from sending out the deputies to go arrest the opponent who's standing there handing out vote for me or vote against Sheriff X brochures? Again, assuming the 100 feet and all that, and assuming you're not blocking the sidewalk, but you're just standing there as people are walking up to vote and trying to get them to vote against Sheriff X or for candidate Y, what's to prevent that arrest? The behavior you're describing is a little bit different than what we have going on here. Is it? Here we have Davidson—the facts known to Officer Flagler that Davidson actually followed specific individuals from their car to the clinic, that he was harassing them, that he was impeding them from entering the clinic, and that it was more than a momentary hesitation. That's specifically what the court found. Under the context of the qualified immunity analysis, again, taking you back to that particular test, qualified immunity basically protects officers except those who knowingly violate the law or the just plainly incompetent. So qualified immunity here protects officers unless they're plainly incompetent or they knowingly violate the law. There's no evidence here that Officer Flag knowingly violated the law, particularly when you take the Hay-Smith analysis. Do you think if he had been standing there handing out coupons for the local car wash that any of this would have happened? He was doing everything else exactly the same, but instead of handing out sonogram coupons or whatever it was and addressing the subject of abortion, he was saying, I have a car wash down the street, this is a dollar off coupon. It's a hypothetical that I can't answer. It could have happened. I just don't know, you know, particularly whether, you know, that would have been a situation where the police office would have been called. But what we do know is that Marilyn Chosid, who was in charge of the clinic, she approached him and asked him to leave, and he did not leave. So I don't know under the hypothetical that you've stated whether that person would have stayed on the green space, whether that person would have been in the entry or exit to the parking lot. The other thing that I wanted to mention before we get off the subject is that the video shows that Davidson was walking back and forth from one curb to another about 36 times. So he was for about 20 minutes in this entry-exit way walking back and forth pretty consistently. When he was not actually approaching vehicles, that's what he was doing. And although Davidson focuses on the fact that the conduct in the cases that we've cited, most of the cases we've cited, was stationary, here Davidson was more of a moving target, and that could arguably be more of an obstruction than if he had just stayed in place stationary next to a curb. That's all my time. I thank you, and I just want to ask that the Court affirm the summary judgment. Thank you, counsel. First, the references to these various aspects of what is shown in the video, first of all, I would point out that the defendant still cannot adduce any evidence that Davidson was rather than moving, rather than was ever a stationary object obstructing anybody for even a moment. But I would go beyond that and point out none of the officers looked at the video before the arrest, and at the qualified immunity stage the question is what facts did the officers know at the time of the arrest and could a reasonable officer believe that they supported probable cause? So the facts that are in the affidavits, the facts that came out of the deposition, are what are relevant to qualified immunity, not some spin on the video. But even if you look at the video, it does nothing but affirm that Davidson never engaged in anything close to obstruction. And I would just point you to record. Chosen's affidavit is record page 148 and 149 are the relevant portions, and there is no statement in here that goes beyond what I've said before. And she says, I observed the plaintiff walking on and approaching customers in the parking lot and sidewalk, etc. I informed Officer Flagg that the plaintiff had been walking in front of the entrance of Planned Parenthood and in the parking lot and was approaching persons entering and exiting the lot and delaying those persons from either entering or exiting. Again, the question is what was occasioning this delay? This is a Planned Parenthood employee claiming that a pro-life person outside their facility is delaying and harassing customers. It's not a crime. Even if he had deliberately slowed and caused a hesitation of a vehicle entering under Sherman, there's not even that much in the record showing that he did even that. So that's what her affidavit actually says. And I would point out also the truth is they weren't trying to arrest him for obstruction, so they really didn't ask the right questions. They arrested him for failure to identify. I realize that if you can find something else he was doing that would justify the arrest, that saves the day for the officers, but it is why they didn't ask the right questions in my view. Well, and I've said that in the brief. And if you watch the video, one of the pertinent parts, I believe, is Officer Flagg, and he testified in his deposition, the only thing I asked Davidson was whether he was approaching or talking to customers. And in the video, you can hear that question and you can hear Davidson's response, which is that, yes, and I'm handing out these cards and he's having a conversation with the officers. And at that point, the questioning abruptly changes to his identification. And once they don't get the answer that they want in terms of his last name and address, that's when the arrest happens. And that whole interaction is probably, I don't know, 30 seconds or so. And this is important in terms of moving force for showing official policy and municipal liability. You're right. Devon Peck allows the officers to get out from the Fourth Amendment claim if they can adduce any reason after the fact, right, that the arrest may have been legal. But that doesn't mean that, as Judge Haynes just recognized, obstruction was nowhere near their calculus at the time of the arrest. The video shows that the moving force for the arrest was the failure to identify policy, where Davidson just said, my name is Jonathan. And at least four times in that video, you can hear the officer say, I think it's usually Officer Jones, saying, you fail to give your identification to us when we're conducting an investigation, you go to jail.  Officer Cron established municipal policy through his testimony. But we also have, in terms of municipal liability, we also have the pattern of practice. And I want to address this point because it's important. I think this is an important issue for the court to look at in terms of even if you think that it's not sufficient, Chief Cron's testimony alone to establish policy as the policymaker, if you look at the pattern of practice here, the defendants have tried to argue that under Pineda and Peterson, this is not enough. And this is a materially different situation than those cases. It's not an excessive force case. It's not an unreasonable search or seizure case. It's a facial misapplication of a criminal statute. And Chief Cron's stated policy as to both of these statutes is manifestly indefensible, which gets you into ratification as well. That's my time. Thank you. The court will take a brief recess for the next argument.